UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA<br><br>V.<br><br>ANTRUM COSTON | Case No. 3:16CR127(SRU)<br><br><br><br>April 10, 2020 |
|---|---|

**GOVERNMENT'S RESPONSE TO MOTION FOR COMPASSIONATE RELEASE**

The United States responds herein to defendant ANTRUM COSTON's emergency motion for compassionate release, which identifies the defendant's particular medical susceptibility during the COVID-19 pandemic. *See* Doc. No. 94.

**I.   CASE BACKGROUND**

By way of background, the defendant was arrested on January 11, 2016 by the New Haven Police Department on charges related to this case. *See* Presentence Report ("PSR") at ¶ 4. An indictment was returned in this matter on July 6, 2016, which charged the defendant with possession of a firearm by a felon. *See* Doc. No. 1. A superseding indictment was returned in this matter on August 3, 2016, which added charges of possession with intent to distribute cocaine and cocaine base and possession of a firearm in furtherance of a drug trafficking crime. *See* Doc. No. 20. On May 18, 2017, pursuant to a plea agreement (Doc. No. 66), the defendant entered a guilty plea to Counts One and Three of the superseding indictment which charged him with possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and possession with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). *See* PSR at ¶ 1. On December 13, 2017, the Court

1

sentenced the defendant to an effective sentence of 40 months of imprisonment to be followed by 3 years of supervised release.

The case was initiated upon a traffic stop of a vehicle driven and solely occupied by the defendant.  *See* PSR at ¶ 8.  During a search of the vehicle, law enforcement found a Jimenez Arms 9 millimeter pistol in the glove compartment.  *See* PSR at ¶ 9.  The pistol, which had previously been reported stolen out of Virginia, was loaded with a magazine which contained 12 nine millimeter rounds and also had one round in the chamber.  *See* PSR at ¶ 9.  Suspected marijuana and a scale were also found in the vehicle.  *See* PSR at ¶¶ 9, 10.  Later, when the defendant was being processed by the Connecticut Judicial Marshals, they found 13 small Ziploc bags which contained a white powder-like substance and also a plastic wrap containing a white rock-like substance inside the defendant's underwear.  *See* PSR at ¶ 11.  Laboratory analysis of these substances confined that the rock-like substance contained cocaine base and had a net weight of 2.736 grams, while the 13 small bags contained cocaine with a net weight of 1.772 grams.  *See* PSR at ¶ 11.

Late last night, the defendant filed a motion for compassionate release.  The defendant represents that he filed a request with the warden of FCI Danbury on April 3, 2020.  *See* Def. Mot. at 3.

**II.**     **DISCUSSION**

The First Step Act of 2018 authorizes a defendant to seek a sentence reduction in the district court, including compassionate release, when compelling and extraordinary reasons support such a reduction.  18 U.S.C. § 3582(c)(1)(A).

### A.  The Exhaustion Requirement

The compassionate release statute requires that a request be presented first to the Bureau of Prisons for its consideration.   Only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal BOP's failure to move on the defendant's behalf, may a defendant move for compassionate release in court.   Here, the defendant has not met such a requirement.   *See United States v. Gileno*, No. 3:19CR161 (VAB), 2020 WL 1307108, at *3 (D. Conn. Mar. 19, 2020) ("As a threshold matter, Mr. Gileno has not satisfied the requirement under 18 U.S.C. § 3582(c)(1)(A) to first request that the Bureau of Prisons file a motion on his behalf and then show that thirty days have passed without any BOP action. As a result, the Court cannot consider his motion to modify his sentence.").

The compassionate release statute provides, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A).

While time-limit may be jurisdictional,[1] even if not jurisdictional, the exhaustion requirement of § 3582(c)(1)(A) is at least a mandatory claim-processing rule and must be

---

[1] Given the plain language and purpose of the statute, the requirements for filing a sentence reduction motion are properly viewed as jurisdictional.   That conclusion is reinforced by the historical powerlessness of the courts to modify a sentence after the expiration of the term at which it was entered.   *See United*

3

enforced if a party "properly raise[s]" it.  *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a non-jurisdictional but mandatory claim-processing rule); *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements."); *United States v. Monzon*, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020) ("It is unnecessary to resolve here whether § 3582(c) creates a jurisdictional bar to the modification of Monzon's sentence or simply sets forth a statutory exhaustion requirement.  If it imposes the latter, it must be 'strictly enforce[ed].'").

The Supreme Court recently reaffirmed that principle in *Ross v. Blake*, 136 S. Ct. 1850 (2016), in which the Court rejected a judicially-created "special circumstances" exception to the

---

*States v. Mayer*, 235 U.S. 55, 67-69 (1914); *United States v. Welty*, 426 F.2d 615, 617-618 & n.8 (3d Cir. 1970).  Section 3582(c) accordingly has been understood as conferring the jurisdictional authority that previously was lacking by providing express statutory authorization to modify otherwise final sentences.

While the Second Circuit has indicated to the contrary, *United States v. Johnson*, 732 F.3d 109, 116 n.11 (2d Cir. 2013), a number of other circuits have recognized that the prerequisites for relief under § 3582(c)(2), which allows a sentence reduction based on a retroactive guideline amendment, are jurisdictional.  *See, e.g., United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *overruled on other grounds by United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012); *United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010); *see also United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007) (canvassing history of judicial treatment of Rule 35 as jurisdictional and holding that Rule 35(a) and § 3582(c)(1)(B) remain jurisdictional after Bowles).  With respect to the entirety of § 3582(c), one district court recently noted that "the Second Circuit has not yet answered the question of whether § 3582(c) is jurisdictional."  *United States v. Monzon*, No. 99CR157 (DLC), 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020).

Ultimately, whether a prescription is jurisdictional turns on Congress's intent, which is properly determined by the text, context, relevant historical treatment, and purpose of the provision.  *Henderson*, 562 U.S. at 436.  Here, the relevant factors indicate that § 3582(c) sets forth a jurisdictional limitation on a district court's authority to modify a sentence, such that a district court lacks jurisdiction to consider a motion for compassionate release where the defendant has failed to satisfy the exhaustion requirement of § 3582(c)(1)(A).

4

exhaustion requirement in the Prison Litigation Reform Act (PLRA). That Act mandates an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). Rejecting the "freewheeling approach" adopted by some courts of appeals, under which some prisoners were permitted to pursue litigation even when they had failed to exhaust available administrative remedies, *Ross*, 136 S. Ct. at 1855, the Court demanded fidelity to the statutory text, explaining that the "mandatory language" of the exhaustion requirement "means a court may not excuse a failure to exhaust" even to accommodate exceptional circumstances, *id.* at 1856. The Court stated:

> No doubt, judge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. *See McKart v. United States*, 395 U.S. 185, 193 (1969) ("The doctrine of exhaustion of administrative remedies . . . is, like most judicial doctrines, subject to numerous exceptions"). But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason, mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.

*Id.* at 1857.

Notwithstanding the foregoing, at least one Court in this district recently held that "'[e]ven where exhaustion is seemingly mandated by statute . . . , the requirement is not absolute.'" *United States v. Colvin*, No. 19cr179 (JBA), 2020 WL 1613943, at *2, *quoting Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). In that case, Judge Arterton held that:

> There are generally three bases for waiver of an exhaustion requirement. *See United States v. Perez*, No. 17cr513-3(AT), ECF No. 98 at 3-4 (S.D.N.Y. Apr. 1, 2020) (discussing exceptions to statutory exhaustion in context of motion for compassionate release during COVID-19 pandemic). "First, exhaustion may be unnecessary where it would be futile, either because agency decisionmakers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. "[U]ndue delay, if it in fact results in catastrophic health consequences, could make exhaustion futile." *Id.* at 120. Second, "exhaustion may be unnecessary

5

where the administrative process would be incapable of granting adequate relief," including situations where "the relief the agency might provide could, because of undue delay, become inadequate." *Id*. at 119-20. Third, "exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id*. at 119.

*Id*. at *2.

### B. Relevant Factors Regarding Compassionate Release

If, notwithstanding the above, the Court reaches the merits of the defendant's motion, the Government defers to the Court, but notes the following for the Court's consideration:

First, the defendant has identified a health condition that could well put him at risk if he were to acquire COVID-19 while incarcerated. The facility he is housed in has well-publicized cases of COVID-19.

Second, the defendant's contemplated release date is in November 2020. The Bureau of Prisons now has considerable discretion to order that inmates such as the defendant be moved to home confinement.

Third, this is a case involving a loaded firearm and narcotics. This is a very serious case, most particularly here because this is the defendant's second federal firearm conviction. The defendant received a 37-month prison term on his first federal firearm conviction and also ended up receiving an additional 18-month sentence when he violated his supervised release by committing a drug offense just months after beginning his release term. *See* PSR at ¶ 33. The defendant committed the instant offense while on state probation. As such, protection of the community is of paramount importance.

Due to the considerations noted above, the Government respectfully submits that should the Court grant the defendant's motion, the Court should modify his conditions of supervised release such that he is confined to his residence.

### III.     CONCLUSION

As such, the Government submits that the defendant has not satisfied the statute's exhaustion requirements.   However, if the Court were to reach the merits of the defendant's motion, the Government defers to the Court.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ *Jennifer R. Laraia*

JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct29637
1000 Lafayette Boulevard, 10th Floor
Bridgeport, CT 06604
(203) 696-3000

CERTIFICATE OF SERVICE

This is to certify that on April 10, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.   Parties may access this filing through the Court's CM/ECF System.

    /s/ *Jennifer R. Laraia*
JENNIFER R. LARAIA
ASSISTANT UNITED STATES ATTORNEY